**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KingVision Pay-Per-View, Ltd., | )<br>) |
| Plaintiff, | )<br>)<br>) No. CV-07-0963-PHX-PGR |
| vs. | )<br>) |
| Baltazar Guzman, et al., | ) ORDER<br>) |
| Defendants. | )<br>)<br>) |

Pending before the Court is the plaintiff's Application for Default Judgment by the Court (doc. #18), wherein the plaintiff seeks judgment against B & G Restaurant, Inc., dba La Tablita Mexican Food ("B & G"), the sole remaining defendant in this action. Having reviewed the record, the Court finds that the application should be granted to the extent that the Court will award the plaintiff the sum of $4,100 in damages and its recoverable costs, including reasonable attorney's fees.[1]

The action arises from the defendants having shown the pay-per-view program on May 14, 2005 featuring the Felix "Tito" Trinidad - Ronald "Winky"

---

[1]    The Court finds that an evidentiary hearing pursuant to Fed.R.Civ.P. 55(b)(2) is not necessary for the purpose of determining the amount of damages to which the plaintiff is entitled as all of the damages the Court is willing to impose are ascertainable from the record before it.

1   Wright boxing match and various undercard bouts without having purchased a

2   license to do so from the plaintiff, which held the sole license to distribute the

3   telecast of these fights.  The complaint alleges three claims: violation of 47 U.S.C.

4   § 605, the Communications Act of 1974 (Count I); violation of 47 U.S.C. § 553,

5   the Cable & Television Protection and Competition Act of 1992 (Count II); and

6   conversion (Count III).  The record establishes that B & G was served on June 9,

7   2007 through personal service on co-defendant Baltazar Guzman, alleged to be

8   the alter ego of B & G and an officer and/or director of B & G.  The Clerk of the

9   Court entered default against B & G on August 6, 2007 (doc. #15).  The plaintiff

10  filed its pending default judgment application on October 22, 2007, and served

11  the application on both Guzman and B & G (through Guzman).

12       A. The Federal Claims

13       The plaintiff alleges that B & G violated both 47 U.S.C. § 605 and 47

14  U.S.C. § 553 in pirating the pay-per-view boxing telecast and it seeks damages of

15  $50,000 under each statute, for a total of $100,000.  As the Ninth Circuit has

16  recognized, "[t]here are potentially intricate issues of overlap and distinction

17  between these statutes, one of which speaks more to cable television, the other

18  more to satellite television."  Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168

19  F.3d 347, 349 n.1 (9th Cir. 1999).  The position taken by a majority of courts is

20  that signals broadcast through the air via radio and satellite are generally within

21  the purview of § 605, including programming transmitted via satellite to cable

22  operators for their transmission to cable subscribers, and signals broadcast

23  through a coaxial cable system are generally within the purview of § 553.   While

24  the plaintiff has not specifically alleged in the complaint, or established through

25  any affidavit, how the pay-per-view program at issue was broadcast (or how the

26

- 2 -

signal was illegally intercepted), all of the cases found by the Court granting default judgment to the plaintiff in actions involving the illegal interception and exhibition of the same pay-per-view programming at issue here accept that at least § 605 is applicable, as the programming was shown via closed circuit television and encrypted satellite signal.[2]

The Court need not, however, definitely resolve this issue since the Court, as do many other courts, takes the position that damages will only be awarded under § 605 when both statutes are applicable since § 605 provides for greater damages and mandates attorney's fees.  *See e.g.*, International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2nd Cir.1993); Kingvision Pay-Per-View. Ltd. v. Backman, 102 F.Supp.2d 1196, 1197 (N.D.Cal.2000) (Court, in declining to award separate damages under both § 605 and § 553 for multiple violations stemming from the same conduct, noted that "[w]hile a few courts have multiplied awards when liability exists under both provisions, the majority of courts - including most courts in the Ninth Circuit - have imposed damages pursuant to § 605 alone rather than cumulatively.") (Internal quotation marks omitted).

The plaintiff has requested an award of statutory damages under Counts I

---

[2]

*See e.g.,* Kingvision Pay-Per-View, Ltd. v. Gutierrez, 2008 WL 583842 (D.Colo. Feb, 12, 2008); Kingvision Pay-Per-View, Ltd. v. Jessica's Restaurant, Inc., 2008 WL 346370 (E.D.N.Y. Feb. 6, 2008); Kingvision Pay-Per-View, Ltd. v. Rojas Deli Grocery, Inc., 2007 WL 2908068 (E.D.N.Y. Oct. 5, 2007); Kingvision Pay-Per-View, Ltd. v. Corneil, 2007 WL 2667449 E.D.N.Y. Sept. 6, 2007); Kingvision Pay-Per-View, Ltd. v. Arnoat, 2007 WL 2076632 (S.D.N.Y. July 13, 2007); Kingvision Pay-Per-View, Ltd. v. El Toria Supermarket, Inc., 2007 WL 1794158 (M.D.Fla. June 19, 2007); Kingvision Pay-Per-View, Ltd. v. Echeverria, 2007 WL 595025 (E.D.N.Y. Feb. 22, 2007); Kingvision Pay-Per-View, Ltd. v. Palaguachi, 2007 WL 42994 (E.D.N.Y. Jan. 3, 2007); Kingvision Pay-Per-View, Ltd. v. Lugo, 2006 WL 3422660 (E.D.N.Y. Nov. 28, 2006); and Kingvision Pay-Per-View, Ltd. v. Wright, 2006 WL 4756450 (M.D.Fla. Oct. 6, 2006).

and II.  Section 605 permits the award of statutory damages for each violation of
between $1,000 and $10,000 "as the court considers just."  47 U.S.C.
§ 605(e)(3)(C)(i)(II).  Section 605 further permits an additional discretionary
award of enhanced damages of up to $100,000 if the court determines that the
violation "was committed willfully and for purposes of direct or indirect commercial
advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).   In this case,
the Court concludes that the plaintiff's request for a total enhanced damage
award of $100,000 is not supported by the evidence, which the plaintiff seems to
recognize since it notes in the conclusion of its memorandum that "it may be
unconventional to award Plaintiff the quantum of damages it now prays for from a
defendant in a default setting[.]"

In assessing damages under § 605, courts either assess a flat amount, or
calculate damages by multiplying either the number of patrons who illegally
watched the pay-per-view program or by the maximum number of patrons
permitted in the establishment by the local fire code by either the residential rate
charged for that particular program, the commercial rate charged for that
particular program, or by some set fee.  The plaintiff requests a flat rate
assessment and the Court concludes that such an assessment is the more
appropriate method given that there is no evidence of record setting forth what
the defendants could have purchased the program for at their restaurant or what
an individual could have purchased it for at his residence.

The only evidence relevant to the issue of damages submitted by the
plaintiff in support of its default judgment application is an affidavit from an
investigator, H. "Chico" Flores, who states that he was in La Tablita restaurant for
15 minutes on the night of May 14, 2005, that the restaurant had four televisions,

that "both" of the televisions were showing the fight between Zab Judah v. Cosme
Rivera, that there was a small eight by ten black and white home-made printing
advertising the fight hanging from the cabinets above the bar area, that the
restaurant had the capacity of approximately 65 people, that he counted the
number of patrons twice, with seven patrons being present for most of the Judah-
Rivera fight and ten patrons being present when he left the restaurant, and that
there was no cover charge to enter the restaurant. The investigator says nothing
in his affidavit about how many of the patrons were actually watching the fight,
whether the restaurant charged a premium for food and drinks during the fight, or
whether B & G has been charged with this type of infringement in the past.

The general rule of law is that upon default all well-pleaded factual
allegations of the complaint regarding liability, but not those relating to damages,
are taken as true. DirecTV, Inc. v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007);
Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977).  Although B
& G is deemed to have admitted liability by defaulting, there is an issue as to
whether the evidence submitted by the plaintiff supports the allegations of the
complaint.  This is so because the investigator's affidavit raises the question of
whether the Judah-Rivera fight he saw being shown was part of the Trinidad-
Wright pay-per-view programming at issue, which is not a factual allegation made
in the complaint.  The Ninth Circuit has held that a § 605 violation occurs when
any portion of a boxing pay-per-view event is illegally intercepted and exhibited,
i.e. even if it is a preliminary (undercard) bout as opposed to the main boxing
bout. Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d at 349.   While the
complaint does not specify what portions of the pay-per-view program the
defendants illegally exhibited, and there is no actual evidence of record

establishing that the Judah-Rivera fight was an undercard bout to the main Trinidad-Wright fight, the Court will take judicial notice of the public records of the Nevada Athletic Commission for May 14, 2005 that establish that the Judah-Rivera fight was part of the Trinidad-Wright program.  *See* KingVision Pay-Per-View Ltd. v. Jessica's Restaurant, Inc., 2008 WL 346370, at fn.2 (E.D.N.Y. Feb.6, 2008) (Court relied on records of the Nevada Athletic Commission to resolve an issue in a § 605 action of whether a certain boxing match was an undercard fight to the Trinidad-Wright fight on May 14, 2005).

In addition to asking for the maximum statutory damages, the plaintiff requests substantial enhanced damages to deter this type of piracy because B & G had to have undertaken specific wrongful actions in order to intercept the encrypted telecast.   A number of courts have concluded that the plaintiff's assertion that the violation was willful is not established by virtue of the default because willfulness is an issue of damages only, not liability. *See e.g.*, Kingvision Pay-Per-View, Ltd. v. Backman, 102 F.Supp.2d at 1198 ("[S]ince Plaintiff's allegations of willfulness bear directly on the question of damages, the mere assertion that defendant acted willfully is insufficient to justify enhanced damages.")  Courts use a variety of factors in determining whether a defendant's conduct is subject to enhanced damages for willfulness under § 605, including prior infringements, substantial unlawful monetary gains, significant actual damages to the plaintiff, the defendant's advertising of the broadcast, and the defendant's charging a cover charge or premiums for food and drinks during the broadcast.  In this case, although the pay-per-view event was illegally broadcast in a commercial setting, there is no evidence in the record of significant "commercial advantage or private financial gain" that justifies a substantial

enhanced damages award - while the plaintiff has presented evidence that there was a small sign inside the restaurant advertising "the fight," there was no cover charge, no evidence of a premium being charged for food or drinks, only ten patrons, and no allegation of prior infringement.

The Court concludes from its review of the record that the plaintiff is entitled to basic statutory damages under § 605(e)(3)(C)(i)(II) of $1,000, and because the Court concludes that some enhancement is warranted by B & G's willful conduct, the Court further concludes that the plaintiff is entitled to enhanced damages under § 605(e)(3)(C)(ii) of $3,000, for total statutory damages of $4,000.

B. The Conversion Claim

The plaintiff's third claim is for conversion, presumably brought pursuant to Arizona common law although the complaint does not so state. While the complaint seeks both compensatory and punitive damages for this claim, the default judgment motion seeks only "approximated" conversion damages of $1,000.

Under Arizona law, if the elements of conversion are shown, "a court must then consider the seriousness of the interference and whether the offending party must pay full value." Miller v. Hehlen, 104 P.3d 193, 203 (Ariz.App.2005). The the ordinary measure of damages for conversion is the reasonable market value of the goods at the time of conversion, with interest. Jones v. Stanley, 233 P. 598, 599 (Ariz.1925); accord, Arizona Power Corp. v. Smith, 119 F.2d 888, 890 (9th Cir. 1941). The plaintiff has not, however, set forth any reasoning supporting its requested $1,000 in damages. There is not, for example, any mention by the plaintiff of what B & G would have had to pay it to have legally obtained a license

to broadcast the pay-per-view event. But since Arizona law provides for at least nominal damages for a conversion, *see* Babbitt & Cowden Live Stock Co. v. Hooker, 236 P. 722, 724-25 (Ariz. 1925) ("Even in the absence of any evidence as to value, plaintiff would have been entitled to nominal damages for the conversion[,]") the Court concludes that the plaintiff is entitled to $100 as damages for Count III.

C. Request for Attorney's Fees and Costs

The plaintiff requests that it also be awarded its reasonable attorney's fees and relevant legal costs pursuant to federal statute; it does not, however, set forth any requested amount.  Section 605(e)(3)(B)(iii) provides that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.")  So that it will have some basis on which to determine the reasonableness of any requested fee request, the Court will require the plaintiff to submit an itemized list of attorney's fees detailing the actual time expended by task (taking into account any "boilerplate" pleading and motion-related forms used by its counsel in this type of action) and the hourly rate charged, and detailing its costs.  Therefore,

IT IS ORDERED that plaintiff KingVision Pay-Per-View, Ltd.'s Application for Default Judgment by the Court (doc. #18) is granted pursuant to Fed.R.Civ.P. 55(b)(2) to the extent that the plaintiff is awarded statutory damages of $4,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C), and conversion damages of $100.00, for a total damages award to be paid by defendant B & G Restaurant, Inc. of $4,100.00, together with the plaintiff's costs and reasonable attorney's fees.  The Clerk of the Court shall enter judgment accordingly.

IT IS FURTHER ORDERED that plaintiff KingVision Pay-Per-View, Ltd.

shall file, in accordance with this Order, its documentation supporting its request for costs and attorney's fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) no later than May 30, 2008.

DATED this 30th day of April, 2008.

Paul G. Rosenblatt
United States District Judge